is in Appeal Number 223035, Tanya Borjas Cruz v. Attorney General Merrick Garland. Mr. Potenski, good morning. Good morning, Your Honors. Respondent does not address the particular social group issue, so I will skip ahead to Nexus and internal relocation. For context, however, we have female business owners, women living alone, and women under risk. Nexus, of course, is a motive inquiry. But the board agreed that those were not cognizable social groups. Are you saying that the government has waived a challenge to that? I believe so, Your Honor. In its brief, it didn't challenge our arguments in our opening brief on that at all. Because the problem, I mean, we've seen this. Actually, we discussed it at some length in the CC decision. You can't define a social group solely by reference to the response of the abuser.  It doesn't have to necessarily be a public fact, but it could be religion. It could be things that you don't wear right out there on your forehead, or maybe you do. But I was actually concerned about that aspect of your argument before we get to the Nexus issue. Sure. So here, I don't think these groups are defined solely by the response or the harm feared. They're also defined by female business owners. That's not a response or the harm feared. It's also defined by women living alone. That's not a response or the harm feared. And it's also defined by gendered women. That's also not a response or the harm feared. So I don't see this as a circular issue. There may be some elements in there that get to that circularity issue, but that's not the only thing defining these groups, and I think that's fine under CC. But is there evidence in the record that women business owners who are perceived to have resources are treated any differently by these terrible people than male business owners who are also perceived to have money and might be able to respond to extortion? Yes. So one of the arguments I've made is that the immigration judge has ignored some of the country conditions evidence. The argument there is if money was the central reason for this as opposed to the particular social groups, they would only focus on people perceived to be wealthy. But the country conditions evidence indicates that they specifically target women and members of vulnerable populations. So that does indicate that there is a gender-based motive there, and that is different from purely money. As we know, gender or vulnerable populations are not inherently wealthy, so there must be something else going on there. And what I've argued is that essentially criminal groups are not stupid. They know the context of the country that they're in, and as argued in the administrative brief, due to 90% impunity rates, women often don't report crimes at all. Or if they do, they experience delays in accessing justice. Criminal groups are aware of this. Their heads aren't buried in the sand. They know that women and other vulnerable populations in Honduras are less likely to get the protection they need from their extortion threats. For that reason, they're targeted. Okay, thank you. Moving back to nexus. Nexus is a motive inquiry. It does not need to be the primary motivation, which I read as meaning it could potentially be a secondary motive, but it still needs to be central. And I think that's important in this case because it's an extortion case. I'm not going to stand here and say there's no financial motive in an extortion case because that's inherent. What we are arguing, however, is that the particular social groups are also central reasons in addition to any financial motive. Of course, the immigration judge and the board have disagreed. They concluded that Ms. Borjas would be targeted because she would be perceived to have money, not because of the particular social groups. So can I back up for a minute? Am I understanding your argument correctly that if what's really going on here is that the criminal gangs target vulnerable people, maybe women who own businesses, maybe older people who own businesses, somebody who's vulnerable, you think that would be enough to show that the harassment was occurring on account of your membership in such a social group even though it's really just, as the immigration judge and the board put it, we want the money and you're an easier mark than somebody else would be? Right. So I think that inference is permissible here. Now, obviously, we have the substantial evidence standard here on appeal, but where I think the immigration judge and the board go wrong in their decision is that they said there was no indication in the record that there was any animus towards women, towards women living alone, or towards female business owners. And that is in the record. I think it's based on the circumstantial evidence of the fact that she was targeted with those characteristics, and I also think it's supported by the country conditions evidence that says they do target women, they do target vulnerable populations. Is the report you're talking about in the record, I think the government complains that it's not? Yes, I believe so. Let me find the citation for you, Your Honor. It's at page 231. It says that organized criminal groups target women, members of vulnerable populations, among others, including members of the business community. And on that members of the business community point, Respondent has expressed that everyone with a business appears to be targeted. However, if that is the motive, we do have nexus here as well to the first group, which is hunter and female business owners. But back to the women in the vulnerable populations, the point is they're not inherently wealthy, so there is an inference that can be made when those groups are targeted that it's not simply because they're perceived to have money, but also because they make good targets for the persecution. Even if you can persuade us of that, you still have the relocation issue. Yes. Moving to internal relocation. This is really a two-part inquiry, whether you can successfully relocate and whether it would be reasonable to do so under the circumstances. As I read the immigration judge's decision, he only addressed the former, focusing on whether anyone came when she tried to relocate to her aunt's home, whether anyone knew she had relocated, whether she received any threats there, and whether they had the geographic reach to even threaten her there. None of this goes to reasonableness, and it only goes to potential success. This doesn't address Ms. Borjas' explanation that she tried to relocate, she went three to four hours away by bus with her aunt, but her aunt kicked her out after a week, fearing for herself as well, and she had nowhere else to go. So you would like us to characterize that as actually an unsuccessful effort to relocate since the aunt very quickly says, you're too risky for me. Yes, Your Honor. In addition to that, I would posit that being homeless is not reasonable relocation. After that, she had nowhere else to go, but her husband was here in the United States, so she came here. Does the record show how old her son was at this point? I don't recall off the top of my head, Your Honor. I apologize. I can get that information. Is he still a minor? He probably is. He is still a minor, yes. If there are no further questions, I'll save the rest of my time for a follow-up. Okay, very well. Ms. Arthur, good morning. Good morning, Your Honors. May it please the Court, Ashley Arthur on behalf of the Attorney General of the United States. I plan to address two independently dispositive reasons for denying the petition for review. First, even assuming the cognizability of the particular social groups, the petition fails because substantial evidence supports the dispositive nexus finding that the woman who extorted the petitioner was motivated by anything other than purely financial gain. And second, petitioner failed to establish that relocation would be unsafe or unreasonable. This case is very similar to Granada's Arias, which this Court decided not too long ago, I believe in November of 2023. There, the particular social groups were, one, women in El Salvador, two, business owners in El Salvador who refused to pay rent, three, business owners who opposed gangs, and four, women business owners. Quite similar to the particular social groups here, and it's petitioner's burden to show that the evidence compels the conclusion that she is entitled to relief, and she failed to meet that burden. Regarding nexus, this Court has also recognized that criminals who extort at a sheer convenience or opportunity, this does not demonstrate the requisite nexus. But I guess that kind of assumes the answer to the question. If the targets for the extortion are, you know, people of a certain race or a small ethnic group or women or targets that are already in classes that seem to be protected classes, maybe they know that the government isn't likely to get in the way. Now, she's actually quite reluctant to contact the police, probably for a reason like that. So I'm concerned that you might be taking a broader position on nexus than the law would support. My answer to that, Your Honor, is, one, she testified that she didn't report to the police because she didn't know what to believe in the news and that the woman scared her. And here, none of the interactions that she had with the woman, nothing about gender, nothing about her gender-based PSGs came up when she communicated with this woman who attempted to extort her twice. But this is the woman who says, if you don't pay up the second time, we're going to clean out your house and kill everybody. Or at least she understands that that's the message that's being conveyed. That's a fairly harsh message. Petitioner can genuinely believe that this threat means certain death or that they're going to take everything from her house, but doesn't necessarily make it so. And here in the record, we have her testimony, and her testimony alone. That's a very harsh standard. Here we are, comfortably sitting in the United States, you know, saying, oh, well, you shouldn't believe it when people say they're going to kill you, even though she probably knows people have been killed. Against the background evidence with her testimony alone, even if she genuinely believes that she will be harmed upon return, she did not challenge the past persecution finding. And as the IJ recognized... That's true. That's true. She's very clear about that. Yes. And as the IJ recognized, she based most of her fear for return on this experience that she had with this unknown woman. We do not know if she's affiliated with any particular criminal organization operating solo. It was a... Well, she at least has one accomplice, the man who's sitting in the car. We may. I did footnote on our brief that that's not an established fact in this case. We do not know if this unidentified man was even the same man the second time that she came with a driver because she testified and admitted that she never interacted or saw his face. We don't know if this man, who stayed in this car the entire time, even knew that this woman he was driving around went and presented herself as an extortionist rather than a consumer of Patricia's business that she was running out of her home. So all we know is this woman is unidentified. We do not know her affiliation. She could just be operating solo. And as the IJ noted, that goes to the relocation too. There's no evidence that this woman has the geographic reach to bother Patricia wherever she goes. There was no evidence that... What do we do with the fact that the aunt doesn't want to keep her? The aunt views her as toxic. And we have cases that say if relocation means you're hiding in somebody's basement, you don't dare come out, that doesn't count as successful relocation. And so she has an unsuccessful effort at relocation from which the immigration judge and the board infer that she can relocate, and that seems quite contradictory. The IJ, for relocation, he notes that, as for the reasonableness that petitioner challenges, the IJ does note this was a bus ride away, three or four hours. She stayed with the aunt an entire week with no other trouble. There was no evidence that these people she fears or this woman bothered her ever again. Because there's only a one-week period. Yes. You're not going to live one week here and one week there for the rest of your life. One week, and then she departed the U.S. Her husband's in the U.S. She departed after one week, and there was no affidavit from this aunt or any other relatives who remain in Honduras. And there is a burden. The burden is on petitioner to establish that she compels reversal. And in the face of you managed to go live with an aunt for a week, then you left because the aunt believes that maybe you'll be harmed. It looks like she went to Puerto Cortez, and according to the IJ, the aunt lived there. But then the IJ says there's other family members who live in that town. What's the record show on that? I believe the IJ is probably referring to her elder sons that moved to another city in Honduras to pursue their higher education, which she quotes was a dangerous city, and no harms come to them either. Is this city specified in the record? That city for the son's school is specified in the record, and I don't have it right in front of me. I believe it's the capital, and I'm sure petitioner's counsel can name the city. So the IJ just mixed up the city on the other family members? I believe the aunt may or may not have children that live with her, but she does have family elsewhere in Honduras. Her three elder sons are attending college or were at the time, and quote what petitioner called a, quote, very dangerous city. And as for the successful aspect of the relocation analysis, considering no one came to look for her and there's no evidence that this woman or the people she fears has the geographic reach, this is not a case even where there's gangs, but we do know gangs operate throughout Honduras. Well, we don't know. You're right about that. I mean, again, I'm completely underwhelmed with the thought that they don't find her inside seven days. You know, if she'd been living with the aunt for six months, I think you'd be having a much more compelling argument. Petitioner does cite page 24 in our brief regarding relocation, where the noncitizen lived for four hours from their hometown unharmed without gang contact. There's no other threats communicated, and because petitioner decided to leave on her own will without any threats or any indication that any more harm was coming, doesn't compel the conclusion that relocation was unreasonable or could not be successful. It was two total attempted threats, one she paid and one she did not. And in these interactions with this woman, there were no weapons involved. The woman never mentioned her particular gender-based social groups. Her gender didn't come up. And that's the point of this case is there's no nexus, and that's why the petition fails just on nexus alone. But there's also the relocation finding, and overall, the record is quite uncompelling, and that's the burden she must meet here today. We know that the woman targeted her for criminal reasons because she said so. The petitioner testified that the woman said every one of the business is targeted. She didn't say or indicate any animosity toward a petitioner over her gender. And this court in Granada's Arias, with very similar particular social groups, decided that when the evidence is showing that women, business owners, no one's exempt from this criminal activity and extortion, that that's not enough to establish a nexus. If there are no further questions, Respondent will rest on the briefs. Okay, thank you, Ms. Arthur. Mr. Mazensky, you have a little more than a couple minutes left. Just two quick points. First, to answer your question about the age of her son, he was born in 2007. The threats occurred in 2016, so he would have been around nine years old. Thank you. There was some discussion about how during the threats nothing about her gender came up. That's not really how these scenarios work. People don't show up at your doorstep and say, I need your money and I need it because I know you're a woman and that's a vulnerable population here in Honduras. And if there are no further questions. Okay, very well. Thanks to counsel for both parties. We'll take the appeal under advisement.